# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **IN TOUCH HOME HEALTH AGENCY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19 C 1545** |
| | ) | |
| **ALEX M. AZAR II, Secretary of the United** | ) | **Judge Rebecca R. Pallmeyer** |
| **States Department of Health and Human** | ) | |
| **Services and SEEMA VERMA, Administrator** | ) | |
| **of the Centers for Medicare and Medicaid** | ) | |
| **Services,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff In Touch Home Health Agency, Inc. is a Medicare-certified home health agency in Chicago Ridge, Illinois, that provides in-home nursing and therapy services to homebound patients. In December 2017, the Centers for Medicare and Medicaid Services (CMS)—the federal agency within the Department of Health and Human Services (HHS) that is responsible for administering the Medicare program—assessed In Touch for an alleged Medicare overpayment of approximately $3.75 million. In Touch has appealed the assessment under the first two stages of the Medicare Act's four-stage administrative appeals process. Those efforts reduced the alleged overpayment only slightly, to approximately $3.4 million. In October 2018, following completion of the second stage of the administrative appeals process, CMS began recouping the alleged overpayment as permitted by relevant regulations. In Touch, for its part, timely sought to initiate the third stage of the administrative appeals process: a *de novo* hearing before an administrative law judge (ALJ).

The Medicare Act provides that the ALJ "shall conduct and conclude a hearing . . . and render a decision . . . not later than" 90 days after a timely request. 42 U.S.C. § 1395ff(d)(1)(A). But due to an enormous backlog in adjudicating Medicare appeals, In Touch will in fact have to wait three to five years to receive an ALJ hearing and decision. In Touch expects to go bankrupt

if recoupment continues while it waits for the ALJ to act.  In Touch filed this lawsuit on March 4, 2019, asserting procedural due process and *ultra vires* claims against Alex M. Azar II, the Secretary of HHS, and Seema Verma, the Administrator of CMS (collectively, Defendants).  In Touch also asserts a "preservation-of-status" claim against Defendants under Section 705 of the Administrative Procedure Act, 5 U.S.C. § 705.  In Touch requests a preliminary injunction "enjoining Defendants from recouping [its] Medicare payments until such time as [In Touch] has received an ALJ hearing and decision."  (Compl. [1], Prayer for Relief ¶ 1.)

Defendants have moved to dismiss In Touch's complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacks subject matter jurisdiction because In Touch has not exhausted its administrative remedies.  Defendants have also moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  As discussed below, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted and In Touch's motion for a preliminary injunction is denied as moot, as is Defendants' motion to dismiss under Rule 12(b)(6).

## BACKGROUND

The court takes the following allegations from In Touch's complaint, except where otherwise indicated.  For purposes of Defendants' motion to dismiss under Rule 12(b)(1), which is the only motion the court will decide, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of In Touch.  *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

### A.    Audits of In Touch and the resulting overpayment determination

In Touch has been providing in-home nursing and therapy services to homebound patients in the Chicago area since 2012.  (Compl. ¶ 2; *see* Ex. A to Compl., Decl. of Hatem M. Khatab, Sole Owner of In Touch ("Khatab Decl.") [1-1] ¶ 2.)  From January 1, 2018 to December 31, 2018, all of In Touch's patients were Medicare beneficiaries; thus, all of In Touch's revenue during that

time came from Medicare reimbursements. (Compl. ¶ 2; *see* Khatab Decl. ¶ 4.)[1]

Medicare is a federal health insurance program for the elderly and disabled. (Compl. ¶ 19; *see* 42 U.S.C. § 1395 *et seq.*) It covers, among other things, "home health services rendered to beneficiaries who are confined to their homes as a result of illness or injury." (Compl. ¶ 20.) Relatedly, it reimburses healthcare providers like In Touch for covered services rendered to eligible beneficiaries. (*Id.* ¶ 22.) CMS, a division of HHS, is responsible for overseeing the operation of the Medicare program. (*Id.* ¶¶ 10-11.) Due to the high volume of claims the Medicare program processes each year, most claims "are not subject to review before they are processed and paid." (*Id.* ¶ 22; *see also* Defs.' Mem. in Supp. of Mot. to Dismiss and in Opp. of Mot. for Prelim. Inj. ("Defs.' Br.") [23], 3.) That is, "CMS generally pays Medicare claims upfront." (Defs.' Br. 3; *see* Compl. ¶ 22.) CMS or its private contractors, however, can "request and review medical records in support of claims submitted for payment." (Compl. ¶ 23.) Unified Program Integrity Contractors (UPICs) are CMS private contractors that assist with these audits. (*Id.* ¶¶ 21, 25.)

In February 2017 and July 2017, a UPIC called AdvanceMed Corporation requested medical records from In Touch concerning 42 claims for home care services that In Touch billed to the Medicare program from 2013 to 2017. (*Id.* ¶¶ 3, 50-52.)[2] These claims represented 3.2 percent of all claims In Touch billed to the program during that timeframe. (*Id.* ¶ 3.) AdvanceMed determined that some of the claims reflected overpayments of Medicare funds to In Touch. (*Id.* ¶ 52.)[3] In addition, it asserted that the 42 claims it audited "constituted a statistically valid

<hr>

[1]     In Touch does not state whether it had non-Medicare patients before 2018.

[2]     In Touch does not explain what prompted this inquiry. In December 2017, after the audit, AdvanceMed "informed In Touch that its claims exceeded state-wide averages for the amounts paid per beneficiary and length of stays" and that AdvanceMed had "identified numerous irregularities in [In Touch's] claims, resulting in an overpayment." (Defs.' Br. 5-6.)

[3]     AdvanceMed first made this determination based on five of eight claims it requested in February 2017. (*See id.* ¶¶ 51-52.) Thereafter, it requested medical records concerning 42 claims. (*Id.* ¶ 52.) The court is uncertain whether these 42 claims included the initial eight claims—or whether AdvanceMed's ultimate overpayment determination included, or

random sample of In Touch's Medicare claims." (*Id.* ¶ 55.) On December 13, 2017, AdvanceMed notified In Touch that it had extrapolated an alleged overpayment of approximately $3.75 million from that sample. (*Id.*)[4] In Touch alleges that AdvanceMed's extrapolation technique was improper but acknowledges that, due to the high volume of claims submitted to Medicare each year, CMS allows UPICs to use "statistical sampling methodologies to extrapolate alleged Medicare overpayments." (*Id.* ¶ 27.) On December 18, 2017, another private contractor for CMS—a Medicare Administrative Contractor (MAC) called Palmetto GBA—"rendered an initial determination formally notifying In Touch of the alleged $3,749,178 overpayment." (*Id.* ¶¶ 21, 56.)

**B.    The Medicare Act's administrative appeals process**

The Medicare Act establishes a four-stage administrative appeals process for a provider to challenge an initial adverse determination on a claim. *See* 42 U.S.C. § 1395ff. First, a provider may submit a claim for "redetermination" to the MAC, which is usually the contractor that made the initial claim determination. *Id.* § 1395ff(a)(3); *see* 42 C.F.R. §§ 405.904(a)(2), 405.940-958. Redetermination "shall be concluded" within 60 days of receiving the provider's request. 42 U.S.C. § 1395ff(a)(3)(C)(ii). If the provider is not satisfied with the decision on redetermination, it can file a second-level appeal ("reconsideration") with a Qualified Independent Contractor (QIC). 42 U.S.C. § 1395ff(c); *see* 42 C.F.R. §§ 405.904(a)(2), 405.960-978. With certain exceptions, a QIC "shall conduct and conclude" the reconsideration within 60 days of the provider's request. 42 U.S.C. § 1395ff(c)(3)(C)(i). At both the redetermination and reconsideration stages, a provider submits written evidence and the MAC and QIC reviewers must explain in writing why they agree or disagree with the previous determination. *See* 42 U.S.C. § 1395ff(a)(5), (c)(3)(E); 42

---

was separate from, its overpayment determination related to the initial eight claims (*see id.* ¶¶ 3, 55)—but these issues do not affect the outcome of the parties' motions.

[4]    AdvanceMed also suspended In Touch's Medicare payments for 180 days beginning on July 12, 2017 and lifted the suspension on December 13, 2017. (*See id.* ¶¶ 52, 55.)

C.F.R. §§ 405.946, 405.956(b), 405.966, 405.968(a), 405.976(b). If the QIC upholds an overpayment determination on reconsideration, CMS can begin recouping the overpayment even though the administrative appeals process is not complete. *See* 42 U.S.C. § 1395ddd(f)(2).

Meanwhile, the provider may request a third-stage appeal: *de novo* review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA). 42 U.S.C. § 1395ff(d)(1)(A); *see* 42 C.F.R. §§ 405.904(a)(2), 405.1000-58. At this stage, the provider is entitled to a live hearing and can present testimony, cross-examine witnesses, and submit written statements of law and fact. *See* 42 C.F.R. § 405.1036(c)-(d). The ALJ "shall conduct and conclude a hearing on a decision of a [QIC] . . . and render a decision . . . not later than" 90 days after the timely filing of a request. 42 U.S.C. § 1395ff(d)(1)(A). The fourth and final level of administrative appeal is a *de novo* review of the ALJ's decision before the Medicare Appeals Council, which is part of the Departmental Appeals Board (DAB) within HHS. *Id.* § 1395ff(d)(2)(A); *see* 42 C.F.R. §§ 405.904(a)(2), 405.1100-40. The Council must issue a final decision within 90 days of receiving the request for review. 42 U.S.C. § 1935ff(d)(2)(A). The Council's decision is the final decision of the Secretary. 42 C.F.R. § 405.1130. After completing the four-stage administrative appeals process, a provider may file suit in federal district court. 42 U.S.C. §§ 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)); *see* 42 C.F.R. §§ 405.904(a)(2), 405.1130. Assuming the adjudicator at each stage meets the statutory deadline for rendering a decision, a provider can complete the administrative appeals process within about one year.

The Medicare Act establishes consequences for administrative reviewers' "failure to meet deadlines." *See, e.g.*, 42 U.S.C. § 1395ff(d)(3). Through a process called escalation, a provider whose case has been pending in certain stages of the appeals process for longer than the statutory time limits may move the appeal to the next stage. *See, e.g.*, 42 U.S.C. § 1395ff(d)(3)(A); 42 C.F.R. § 405.1100(b). In relevant part, if the ALJ fails to issue a decision, dismissal order, or remand to the QIC within 90 days of a provider's timely request for a hearing, the provider can file a request to escalate the appeal to the DAB stage. 42

U.S.C. § 1395ff(d)(3)(A); 42 C.F.R. §§ 405.1016(a), (e), (f), 405.1100(b).  The ALJ then has five calendar days to issue a decision, order a dismissal or remand, or advise the provider that it cannot issue a decision or order.  42 C.F.R. § 405.1016(f)(2).  If the ALJ cannot issue a decision or order, the appeal bypasses the ALJ stage and the DAB must review the QIC's reconsideration decision.  *Id.*  Separately, if the DAB fails to issue a decision, dismissal order, or remand concerning an appeal from an ALJ decision within 90 days—or within 180 days if the appeal was escalated to the DAB—a provider can escalate the appeal to a federal district court.  42 U.S.C. § 1395ff(d)(3)(B); 42 C.F.R. §§ 405.1106(b), 405.1100(d), 405.1132.

**C.      In Touch's administrative appeal**

In Touch concedes that it has completed only the first two stages of the Medicare Act's administrative appeals process.  It also concedes that it has not availed itself of the Act's escalation provisions.  In Touch's appeal efforts began soon after the MAC (Palmetto) rendered its initial determination notifying In Touch of the alleged $3,749,178 overpayment.  (Compl. ¶ 56.) That determination issued in December 2017.  (*Id.*)  In February 2018, In Touch submitted a first-stage appeal:  a request for redetermination of the alleged overpayment from Palmetto.  (*Id.* ¶ 58.) Palmetto's redetermination decision "was partially favorable in that three claim denials were overturned in whole or in part."  (*Id.*)  "Based on this decision, the alleged overpayment was recalculated to be $3,485,692."  (*Id.*)  In July 2018, In Touch submitted a second-stage appeal:  a request for reconsideration from a QIC called Maximus Federal Services, Inc.  (*Id.* ¶ 60.) Maximus rendered a "partially favorable reconsideration decision" in August 2018.  (*Id.*) Specifically, it "revers[ed] the denial of one claim but otherwise affirm[ed] the overpayment assessment."  (*Id.*)  Maximus thus recalculated the assessment to be $3,402,858. (*Id.*)  In Touch timely sought to initiate the third stage of its appeal by filing a request for *de novo* ALJ review on October 22, 2018.  (*Id.* ¶ 62.)  The ALJ's 90-day deadline to hold a hearing and issue a decision was January 20, 2019.  (*Id.*)  As of September 9, 2019, the date this court last held a hearing on the parties' motions, In Touch has not received ALJ review.

## D. Backlog for ALJ and MAC review

In Touch alleges, and Defendants concede, that In Touch is unlikely to receive an ALJ hearing and decision for at least three and perhaps as long as five years. (*Id.* ¶ 5.) For various reasons, including a "dramatic[] increase[]" in "pre- and post-payment reviews of Medicare claims," the workload of ALJs has risen significantly since approximately 2010. (*Id.* ¶¶ 37-38.) "In 2013, OMHA suspended assignment of hearing requests to ALJs because the ALJs were unable to accommodate the growing number of appeals on their dockets." (*Id.* ¶ 39.) The assignment suspension was in effect when In Touch filed this lawsuit. (*See id.*) "At the end of the 2018 fiscal year, there were approximately 426,000 backlogged appeals pending before OMHA." (*Id.* ¶ 40.) "Similar processing delays plague the" DAB's Medicare Appeals Council. (*Id.* ¶ 42.) "For example, at the end of fiscal year 2016, there were 22,707 appeals pending before the Council." (*Id.*) During the same year, the MAC adjudicated "only 3,723 appeals." (*Id.*) Although HHS is working to alleviate the problem, "the average processing time for ALJ hearing requests increased slightly from 1,108 [days] in fiscal year 2017 to 1,142 [days] in fiscal year 2018." (*Id.* ¶ 43.) HHS "forecasts that [it] will not be able to eliminate the backlog of pending appeals and bring OMHA into compliance with statutory processing times until 2022 at the earliest." (*Id.* ¶ 44; *see* Defs.' Br. 8 (similar).)

## E. In Touch's financial hardship

On or about October 29, 2018, CMS began to recoup the alleged overpayment by withholding all of In Touch's Medicare payments. (Compl. ¶ 63; Khatab Decl. ¶ 10; *see* 42 C.F.R. § 405.370 (the government recoups an overpayment "by reducing present or future Medicare payments" to the provider "and applying the amount withheld to the indebtedness"); *see also* 42 C.F.R. § 405.371(a)(3).) In Touch estimates that CMS "has recouped approximately $240,000 in Medicare receivables to date." (Khatab Decl. ¶ 10.) "The recoupment has reduced In Touch's revenue to $0." (*Id.*) To remain in business, In Touch "has laid off three of its 16 employees and converted" its remaining employees to part-time status. (Compl. ¶ 64.) It has

also "drawn on an existing line of credit and taken out loans." (*Id.*)  In Touch "has approximately $160,000 in outstanding debt obligations unrelated to the alleged Medicare overpayment." (*Id.*)

On or about January 3, 2019, In Touch filed a request with Palmetto to establish an extended repayment schedule (ERS). (*Id.* ¶ 65; *see* 42 U.S.C. § 1395ddd(f)(1)(A) (providing that if repaying the overpayment within 30 days "would constitute a hardship" as defined in the Act, HHS "shall," with some exceptions, "enter into a plan with the provider . . . for the repayment" to occur "over a period of at least 6 months but not longer than 3 years," or "not longer than 5 years in the case of extreme hardship . . . .").)  In Touch submitted "detailed financial documentation" to Palmetto; explained that it could not afford to "make monthly payments in equal installment amounts over the course of" five years; and "proposed a graduated repayment arrangement within the" five-year timeframe. (Compl. ¶ 65.)  Had the proposed ERS been approved, In Touch would have been reimbursed for new Medicare claims while it continued making monthly payments. (*See* In Touch Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Br.") [11], 6.)  In a letter dated January 14, 2019, Palmetto informed In Touch that the documentation it supplied was "insufficient" to support its request and gave In Touch an opportunity to submit additional documentation. (*See* Compl. ¶ 65; January 2019 Palmetto Ltr., Ex. J to Compl. [1-10].)  On or about May 14, 2019, In Touch submitted a second ERS request. (*See* Notice of ERS Denial [32].)  Palmetto concluded that In Touch's financial submissions confirmed that In Touch lacks "the ability to pay current liabilities as they become due," and therefore denied the second ERS request. (*Id.*)  On August 20, 2019, In Touch informed the court that it "continues to suffer irreparable harm and will be forced to cease operations in the immediate future absent [court] intervention." (August 2019 Notice [33], 1.)

## <u>LEGAL STANDARD</u>

In Touch asks the court for a preliminary injunction ordering CMS to stop recouping its new Medicare payments until it receives an ALJ hearing and decision.  The court can grant a preliminary injunction only if it has subject matter jurisdiction over this case. *See Medlock v. Trs.*

*of Ind. Univ.*, 683 F.3d 880, 882 (7th Cir. 2012) (if a court "lack[s] subject-matter jurisdiction," it "must dismiss" the case). Defendants argue that the court lacks subject matter jurisdiction and have therefore moved to dismiss all claims under Rule 12(b)(1). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology*, 770 F.3d at 588. "[T]he party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012). In assessing a motion to dismiss under Rule 12(b)(1), the court "accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Ctr. for Dermatology*, 770 F.3d at 588 (internal quotation marks omitted). "When subject-matter jurisdiction is disputed," however, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Miller v. Fed. Deposit Ins. Corp.*, 738 F.3d 836, 840 (7th Cir. 2013) (internal quotation marks omitted). If the court dismisses a complaint for lack of subject-matter jurisdiction, it does so without prejudice. *Love v. Supreme Court of Ill.*, 723 F. App'x 366, 367 (7th Cir. 2018) (citing *Lennon v. City of Carmel, Ind.*, 865 F.3d 503, 509 (7th Cir. 2017)).

## DISCUSSION

Defendants argue that the court lacks subject matter jurisdiction over this case because In Touch has failed to exhaust its administrative remedies under the Medicare Act. For the following reasons, the court agrees.[5]

### A.     The Medicare Act's exhaustion requirement

The Medicare Act provides for federal judicial review of any final decision of the Secretary that is made after a hearing.     42 U.S.C. § 405(g);   42 U.S.C. § 1395ff(b)(1)(A)

---

[5]         In its complaint, In Touch suggests that the court has subject matter jurisdiction over its claims under the Administrative Procedure Act. (*See* Compl. ¶ 13.) Neither In Touch nor Defendants briefed this theory, however. Accordingly, the court does not address it.

(incorporating § 405(g) of the Social Security Act, as part of the Medicare Act). Although a district court typically has jurisdiction over cases arising under a federal statute pursuant to 28 U.S.C. § 1331, the Medicare Act prohibits federal courts from hearing cases under that statute. *See* 42 U.S.C. § 405(h) ("No action against the United States, the [Secretary of HHS], or any officer or employee thereof, shall be brought under § 1331 . . . to recover on any claim arising under this subchapter."); 42 U.S.C. §§ 1395ii (incorporating § 405(h) into the Medicare Act); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 9 (2000) ("Section 1395ii makes § 405(h) applicable to the Medicare Act 'to the same extent as' it applies to the Social Security Act.").

The Supreme Court has explained that together, Sections 405(g) and 405(h) require a party to exhaust administrative remedies before seeking judicial review of any claim arising under the Medicare Act. *See Heckler v. Ringer*, 466 U.S. 602, 627 (1984); *see also Ill. Council*, 529 U.S. at 5 (holding that "§ 405(h), incorporated by § 1395ii, bars federal-question jurisdiction" under § 1331 and instead requires parties to proceed "through the special review channel that the Medicare statutes create"); *Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 440 (7th Cir. 2005) (Section 405(h) "has been held to preclude federal question jurisdiction unless the Medicare program's administrative review process has been exhausted" (discussing *Ill. Council*, 529 U.S. at 5).) Accordingly, "a provider must channel virtually all legal attacks through the Medicare program's administrative review process before it may seek judicial review." *Michael Reese*, 427 F.3d at 441; *see Ill. Council*, 529 U.S. at 13. In practical terms, this means that a provider cannot bring its claim to federal court until it has (1) completed all four stages of the administrative appeals process or (2) escalated the claim to the Medicare Appeals Council of the DAB, which either renders a decision or fails to act within 180 days. *See* 42 U.S.C. § 1395ff(b)(1)(A) (incorporating § 405(g)); 42 U.S.C. § 1395ii (incorporating § 405(h)); 42 C.F.R. § 405.1132. The Medicare Act's "channeling" requirement "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly

premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case." *Ill. Council*, 529 U.S. at 13; *see Michael Reese*, 427 F.3d at 441 (stating that the "exhaustion requirement serves an important purpose"; it "prevent[s] the premature interference with agency processes so that the agency can function efficiently and can correct its own errors," and "afford[s] the parties and the courts the benefit of the agency's experience and expertise and compiling a record which is adequate for judicial review") (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

"The Supreme Court has regarded [§ 405(g)'s] 'requirement that there be a final decision by the Secretary after a hearing' as 'central to the requisite grant of subject-matter jurisdiction.'" *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 624 (7th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)), *cert. denied*, 138 S. Ct. 1000, 200 L. Ed. 2d 252 (2018). "This requirement consists of two elements, 'only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case.'" *Hemmelgarn*, 861 F.3d at 624 (quoting *Eldridge*, 424 U.S. at 328). The Secretary or the court may waive the requirement of exhaustion of administrative remedies; what cannot be waived "'is the requirement that a claim for benefits shall have been presented to the Secretary.'" *Hemmelgarn*, 861 F.3d at 624 (quoting *Eldridge*, 424 U.S. at 328).

The parties agree that In Touch's claims "arise under" the Medicare Act, meaning that they are subject to the exhaustion requirement. (*See* Compl. ¶¶ 13, 15; Defs.' Br. 8-9.) It is undisputed that In Touch has presented its claim for benefits to the Secretary and has therefore satisfied the "nonwaivable element" of the exhaustion requirement. *Hemmelgarn*, 861 F.3d at 624. But In Touch concedes that it has failed to exhaust its administrative remedies; it has completed only the first two stages of the administrative appeals process and has not escalated its appeal to the DAB, even though the ALJ's 90-day deadline for issuing a final decision has passed. Moreover, the Secretary has not waived the exhaustion requirement. As indicated, Defendants maintain that the court should dismiss In Touch's claims as a result of the failure to

exhaust.  In Touch responds that the court can exercise subject matter jurisdiction by finding the exhaustion requirement waived under the collateral claim doctrine contemplated in *Eldridge*, 414 U.S. at 329-35.

**B.      Waiver of the Medicare Act's exhaustion requirement**

The Secretary may waive the exhaustion requirement if, "at any stage of the administrative process," he determines that further review is unwarranted "either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond his power to confer." *Eldridge*, 424 U.S. at 330; *see Hemmelgarn*, 861 F.3d at 624 (same); *Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1241 (7th Cir. 1981) (same).  If, as in the present case, the Secretary does not waive the requirement, a federal court may hold it waived where (1) the claimant raises a colorable constitutional challenge that is entirely collateral to its claim of entitlement and (2) the "claimant's interest in having . . . [the] issue resolved promptly is so great that deference to the agency's judgment is inappropriate."  *Eldridge*, 424 U.S. at 430; *see Hemmelgarn*, 861 F.3d at 624 (same); *Northlake*, 654 F.2d at 1241 (same).  In Touch argues that the court should do so here.  (*See, e.g.*, Compl. ¶ 15; Pl.'s Br. 6-7.)[6]

In assessing a request for waiver under *Eldridge*, the Seventh Circuit considers three factors:  (1) whether the claim is colorable and "collateral to a demand for benefits"; (2) whether "exhaustion of the administrative process would be futile"; and (3) whether "the plaintiff[] would suffer irreparable harm if required to move through the administrative procedure before obtaining relief."  *Martin v. Shalala*, 63 F.3d 497, 504 (7th Cir. 1995); *Health Equity Resources Urbana, Inc.*

---

[6]      The Supreme Court has also recognized a limited exception to the exhaustion requirement where "application of § 405(h) would not simply channel review through the agency, but would mean no review at all."  *Ill. Council*, 529 U.S. at 19 (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986)); *see also Michael Reese*, 427 F.3d at 441 (same).  In determining whether the *Michigan Academy* exception applies, courts must, among other things, distinguish "a total preclusion of review" from mere "postponement of review."  *Ill. Council*, 529 U.S. at 19; *see, e.g.*, *Miller v. Burwell*, No. 14-cv-4245, 2015 WL 2257278, at *5-6 (N.D. Ill. May 11, 2015) (noting this distinction in determining that the exception was inapplicable).  In Touch does not invoke the *Michigan Academy* exception so the court does not address it.

*v. Sullivan*, 927 F.2d 963, 965-66 (7th Cir. 1991) (considering futility as part of the waiver analysis); *Northlake*, 654 F.2d at 1241-42.[7] "The ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986).

### 1.      Whether the constitutional claim is collateral

In Touch contends that, given the egregious backlog in the administrative appeals process, Defendants are violating its procedural due process rights by recouping the alleged overpayment before In Touch obtains an ALJ hearing and decision. Defendants argue for the first time on reply that this claim is not collateral to the underlying claim for Medicare benefits. (*See* Defs.' Reply [26], 14.) They rely on *Ancillary Affiliated Health Services, Inc. v. Shalala*, 165 F.3d 1069 (7th Cir. 1998), in which a Medicare provider claimed that HHS wrongfully withheld reimbursement payments and moved for an injunction compelling HHS to repay approximately $40,000. *Id.* at 1069-70. The Seventh Circuit determined that Ancillary's "claim that the Secretary failed to issue a notice required by her regulations" was in reality "a claim for reimbursement" because, despite "involv[ing] alleged due process violations," it sought "to recover funds under the Act." *Id.* at 1071.

The court need not decide whether In Touch's claim is collateral because, as discussed below, In Touch's waiver request fails for other reasons. Case law suggests, however, that In Touch's claim is indeed collateral. In *Ancillary*, the court concluded otherwise because the provider sought permanent repayment of Medicare funds. *See* 165 F.3d at 1070; *see also*

<hr>

[7]      In *Hemmelgarn*, the Seventh Circuit did not address futility or irreparable harm. *See* 861 F.3d at 623-26. The court does not interpret *Hemmelgarn* as eliminating the three-factor test set forth in *Martin*, however. Rather, the court understands futility and irreparable harm as relevant to the determination whether "claimant's interest in hearing the issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 624. Presumably, the court in *Hemmelgarn* did not reach this inquiry because it determined that plaintiff's claim was neither collateral nor colorable. *See id.* at 624-26.

*Hemmelgarn*, 861 F.3d at 625 (an "attack[]" on "survey results underlying" the termination of plaintiff's Medicare provider agreement, merely "framed as" a constitutional claim, was not collateral); *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir. 2000) (if a successful claim would result in the claimant being "entitled to increased benefits," it is "inextricably intertwined" with, not collateral to, a benefits determination); *Martin*, 63 F.3d at 504 (a complaint "seek[ing] damages for lost benefits" was "in no way collateral to an amounts determination"). By contrast, in *Eldridge*, a claimant argued that he was constitutionally entitled to an evidentiary hearing before termination of his Social Security disability benefits and asked the lower court to order temporary reinstatement of benefits pending the hearing. *See Eldridge*, 424 U.S. at 325, 330-31. The Supreme Court held that the claimant's constitutional claim was "entirely collateral to his substantive claim of entitlement," which concerned, among other things, "the issue of his disability." *Id.* at 325, 330; *see also, e.g.*, *Aurora Chi. Lakeshore Hosp. v. Azar*, 356 F. Supp. 3d 749, 758-59 (N.D. Ill. 2018) (where plaintiff's "constitutional and statutory entitlement to" certain procedures was "not the subject of its administrative appeal, and a final decision by the agency . . . would not answer [plaintiff's] challenge to the deprivation of its procedural rights," plaintiff's claim was collateral).

In Touch's claims are more like those in *Eldridge* and *Aurora.* In Touch does not seek a merits determination concerning the alleged overpayment owed, nor does it disguise claims for permanent repayment of Medicare funds as procedural due process claims. Instead, it seeks to temporarily halt recoupment pending an ALJ hearing and decision. If In Touch were to prevail in this court, the amount of overpayment that it allegedly owes would not change. Moreover, adjudicators in the administrative appeal would not decide In Touch's procedural due process claim. Indeed, Defendants have stated that the proposed "[r]elief from repaying a Medicare debt has nothing to do with the actual merits of a pending appeal." (Defs.' Br. 20.)

      **2.    Whether the constitutional claim is colorable**

Whether In Touch's claim is "colorable" also need not be resolved; on this issue too,

however, In Touch is vulnerable. In assessing whether a constitutional claim is colorable, the Seventh Circuit considers the following criteria from *Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335; *see Northlake*, 654 F.2d at 1242 (same).

Turning to the first factor, the court doubts that In Touch has a constitutionally protected interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of" constitutionally protected interests). To claim such an interest, "a person must have more than a unilateral expectation of [it]." *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (internal quotation marks omitted). Instead, he must "have a legitimate claim of entitlement to" the interest. *Id.* (internal quotation marks omitted). "A legitimate claim of entitlement is 'defined by existing rules or understandings that stem from an independent source'" such as a contract, state, or federal law. *Id.* (quoting *Roth*, 408 U.S. at 577); *see Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

In Touch argues that it "has a property interest in the receipt of Medicare payments for services it provides to beneficiaries." (Pl.'s Br. 9.) But the court agrees with Defendants that the alleged property interest is more accurately framed as an interest in Medicare funds that remain subject to recoupment. (*See* Defs.' Mot. 11-12.) As the parties acknowledge, the Seventh Circuit has not specifically addressed either type of interest. In Touch relies on *Hathaway v. Mathews*, in which the Seventh Circuit determined that a nursing home owner's "expectation of continuing to receive Medicaid payments on behalf of" the home's residents was "a protected property right under the due process clause," and held that the government could not terminate the payments until it had provided notice of the charges against the home and "conducted a hearing in which [the owner] [could] challenge the validity of those charges." 546 F.2d 227, 230, 232 (7th Cir.

1976).  But the Seventh Circuit has limited the application of *Hathaway* "to its unique factual situation, including a lack of prior notice of deficiencies from the terminating agency and the absence of post-termination appeal procedures." *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1083 (7th Cir. 1982).  Neither of those factors is present here.

In Touch also cites several out-of-circuit cases that do squarely address the issue; in these cases, the courts held that providers do have a property interest in Medicare payments that are subject to recoupment.  *See Accident, Injury & Rehab., PC v. Azar*, No. 4:18-cv-2173, 2018 WL 4625791, at *7 (D.S.C. Sept. 27, 2018); *Adams EMS, Inc. v. Azar*, No. H-18-1443, 2018 WL 3377787, at *4 (S.D. Tex. July 11, 2018); *Family Rehab., Inc. v. Azar*, No. 3:17-cv-3008-K, 2018 WL 3155911, at *4-5 (N.D. Tex. June 28, 2018).  These cases are not binding authority, however, and Defendants have cited several non-binding cases in which courts reached the opposite conclusion.  *See Alpha Home Health Solutions, LLC v. Sec'y of United States Dep't of Health & Human Servs.*, 340 F. Supp. 3d 1291, 1303 (M.D. Fla. 2018); *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572 (S.D. Tex. 2018)*; PHHC, LLC v. Azar*, No. 1:18CV1824, 2018 WL 5754393, at *10 (N.D. Ohio Nov. 2, 2018).

The case law is equivocal, but the court finds Defendants' arguments that In Touch lacks a property interest more convincing.  Among other things, Defendants emphasize that In Touch's interest in Medicare repayments is derived from the Medicare Act, and the Act explicitly qualifies the interest.  *See Booker-El*, 668 F.3d at 900 (a legitimate claim of entitlement arises from an "independent source" such as federal law).  Specifically, the Act permits the Secretary to "determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it," and to make "necessary adjustments on account of previously made overpayments or underpayments."  42 U.S.C. § 1395(g)(a).  Defendants then point to *American Manufacturers Insurance Co. v. Sullivan*, 526 U.S. 40 (1999), where the Supreme Court held that an employee had no property interest in continued payment of workers' compensation benefits because under state law, the employee had to meet certain eligibility

criteria to receive them.  *Id.* at 60-61.  Only after the employee met the criteria, the Court reasoned, would he have a constitutionally protected interest.  *See id.* at 61.  Defendants contend that In Touch similarly lacks a property interest in the Medicare funds at issue due to the Secretary's statutory authority to recoup them.  (*See* Defs.' Br. 12-13.)  Finally, at least two Seventh Circuit cases concerning Medicare appeals suggest that the Constitution does not protect the interest In Touch claims, or that if it does, the interest is weak.  In *Northlake*, where a provider asserted a constitutional interest in a Medicare provider agreement, the court observed that the "provider . . . is not the intended beneficiary of the Medicare program."  654 F.3d at 1242.  It continued,

> Obviously, the termination of Medicare assistance has a financial impact (potentially severe in many instances) on the institution.  But a provider's financial need to be subsidized for the care of its Medicare patients is only 'incidental to the purpose and design of the (Medicare) program.' . . . 'The unfortunate reality that (the institution) will probably encounter difficulty operating at capacity is not of constitutional significance.'

*Id.* at 1242 (quoting *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981)).  More recently in dicta, the Seventh Circuit expressed doubt that "current Medicaid providers even have a protected interest in continuing in the program."  *Grason v. State of Ill. Inspector Gen.*, 559 F. App'x. 573, 574 (7th Cir. 2014) (citing, *inter alia*, *Geriatrics*, 640 F.2d at 264-65)).

Even assuming In Touch has a property interest in Medicare funds subject to recoupment, the government's interests in ensuring Medicare beneficiaries' health and safety and "minimizing the expenses of administering the Medicare program" are likely stronger.  *Northlake*, 654 F.2d at 1242.  As noted, the program's intended beneficiaries are patients, not providers.  *See id.*  If the government were required to halt recoupment in all relevant cases due to the logjam in the administrative appeals process, it might be unable to continue reimbursing the majority of Medicare claims upfront, as it currently does.  That could harm patients in addition to providers and make Medicare administration more expensive.

Nor has In Touch made a strong showing that the risk of erroneous deprivation is high.  In

Touch had the opportunity to submit written evidence to the MAC and QIC reviewers on redetermination and reconsideration. *See* 42 C.F.R. §§ 405.946, 405.966, 405.968(a). Although In Touch was not entitled to a hearing at those stages of review, it was required to submit all of its factual evidence by the reconsideration stage, absent a showing of good cause. *See* 42 U.S.C. §§ 1395ff(b)(3) ("A provider . . . may not introduce evidence in any appeal under this section that was not presented at the reconsideration . . . unless there is good cause which precluded the introduction of such evidence at or before that reconsideration."). The QIC reviewer, therefore, presumably had all relevant evidence at its disposal in rendering its decision. At both levels of review, the MAC and QIC reviewers upheld the overpayment determination with only minor downward adjustments. And as required, they submitted written decisions explaining their reasoning. *See* 42 U.S.C. §§ 1935ff(a)(5), (c)(3)(E); 42 C.F.R. §§ 405.956(b), 405.976(b).

In Touch suggests that it was unable to create a full factual record during the first two stages of review. (*See* Pl.'s Reply [25], 11-13.) It also contends that the MAC and QIC reviewers did not meaningfully address the substance of its arguments. (*See id.* at 11-13.) The court is not persuaded on either score. In Touch, for example, criticizes the MAC and QIC reviewers for copying portions of their decisions from decisions on other appeals. (*See, e.g.*, Compl. ¶¶ 59, 61; Pl.'s Reply 11.) But In Touch does not explain how, if at all, the copying led to any factual deficiency in the record or any substantive deficiency in the reviewers' decisions. In Touch also maintains that MAC and QIC reviewers are not qualified to consider legal arguments and, specifically, that the reviewers did not meaningfully address its argument that the extrapolated overpayment should be waived for various reasons set forth in the Medicare Act. (*See* Pl.'s Br. 10-11; Pl.'s Reply 11, 12 & n.14.) This argument is unavailing for similar reasons: In Touch cites to the entirety of the redetermination and reconsideration decisions and notes that the waiver-related language was copied from decisions in other appeals, but does not explain how the decisions were substantively incorrect or incomplete.

Concerning the factual record, In Touch contends that Defendants may have failed to

disclose highly relevant information during the redetermination process. (*See* Pl.'s Reply 11-12 (explaining that with the briefing on their motion to dismiss, Defendants submitted two expert reports by a statistician, which In Touch had not previously seen).) If In Touch in fact lacked relevant materials during the first two stages of appeal, it is responsible. As required under the Medicare Act, the MAC reviewer notified In Touch that it could "obtain, upon request, information on the specific provision of the policy, manual, or regulation used in making the redetermination." 42 U.S.C. §§ 1395ff(a)(5)(C); *see also* 42 C.F.R. § 405.956(b)(9); Redetermination Decision, Ex. D to Compl. [1-4], 57 (stating same, and further stating that In Touch could direct other questions "specifically related to [the] appeal" to the MAC). The QIC reviewer provided similar notice. (*See* Reconsideration Decision, Ex. G to Compl. [31], 46, 48; *see also* 42 U.S.C. § 1395ff(c)(3)(E) (requiring QIC to explain decision thoroughly); 42 C.F.R. § 405.976(b)(10) (QIC decision must contain "procedures for obtaining additional information concerning the reconsideration . . . .").) As far as the court can tell, In Touch never requested records from the MAC or QIC, but instead sent a Freedom of Information Request to the wrong entity: AdvanceMed, which had no role in the redetermination or reconsideration. (*See* Pl. Reply 12 n.15; Defs.' Reply 8-9 & n.3.)[8] Even if In Touch lacks documents from the record on redetermination and reconsideration, it can obtain them now by requesting a copy of the administrative record. *See* 42 C.F.R. § 405.1042(a)(3).

Finally, In Touch argues that the risk of erroneous deprivation is high because "[h]istorically, ALJs have reversed large percentages of unfavorable claim determinations." (Compl. ¶ 36; *see also id.* (alleging that in 2012, "approximately 60% of ALJ decisions were fully or partially favorable to applicants," and that "ALJs reversed 72% of adverse claim determinations appealed by hospitals through the first quarter of 2013"); Pl.'s Reply 13 (citing same).) Defendants

---

[8] In Touch alleges that although it has received a response to the FOIA request, "the materials produced with the response were identical to those released with the initial audit determination" and did not include the documents In Touch had requested. (*See* Pl.'s Reply 12 n.15.)

respond that things have changed: in 2017 and 2018, they assert, "ALJs rendered 'favorable' or 'partially favorable' decisions . . . in only about 18% of cases." (Defs.' Br. 19.) In Touch does not dispute this figure but argues that a new HHS settlement program is largely responsible for the decrease in reversal rates. (*See* Compl. ¶ 36 n.3.) In Touch believes that the rate will "likely begin to increase" because the settlement program has concluded (*id.*), but Defendants assert that the settlement program remains in place, and In Touch has not responded. (Defs.' Br. 19; *see generally* Pl.'s Reply.) Moreover, in *Eldridge*—where the alleged reversal rate varied from 3.3 percent to 58.6 percent—the Supreme Court stated that "[b]are statistics rarely provide a satisfactory measure of the fairness of a decisionmaking process." *Eldridge*, 424 U.S. at 346. Here, as in *Eldrige*, statistics concerning rates are "relevant" but "certainly not controlling." *Id.* at 347. The statistics do not persuade the court that the risk of erroneous deprivation in the first two stages of the administrative appeals process was high.

Even assuming that In Touch's claim is colorable, however, the court concludes that In Touch cannot clear the remaining hurdles for waiver of the exhaustion requirement, as discussed below.

### 3. Whether exhaustion would be futile

Defendants argue that In Touch cannot establish that exhaustion of its administrative remedies would be futile because it has not availed itself of the Medicare Act's escalation process. In Touch responds, first, that futility is not a "mandatory component" of the waiver analysis and is, instead, a "practical" factor that the court should consider. (*See* Pl.'s Reply 17-18.) The court is persuaded that futility is an important consideration in this case, regardless of whether it is "mandatory." The Seventh Circuit has analyzed futility in determining whether it should waive the exhaustion requirement, *see Martin*, 63 F.3d at 504; *Health Equity Resources*, 927 F.2d at 965-66, and relying on *Martin*, courts in this district have done the same. *See MedPro Health Providers, LLC v. Hargan*, No. 17 C 1568, 2017 WL 4699239, at *4-5 (N.D. Ill. Oct. 19, 2017); *Miller*, 2015 WL 2257278, at *4, *6-7 (same). Other Courts of Appeals have identified futility as a

relevant factor, as well. *See Blue Valley Hosp., Inc. v. Azar*, 919 F.3d 1278, 1284 (10th Cir. 2019); *Kaiser v. Blue Cross of Calif.*, 347 F.3d 1107, 1115 (9th Cir. 2003); *Day v. Shalala*, 23 F.3d 1052, 1059-60 (6th Cir. 1994); *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992); *but see, e.g.*, *Family Rehab., Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018) (waiving exhaustion requirement without assessing futility).

In Touch points out that in 2018, one court in this district declined to assess futility. (Pl.'s Reply 18 (citing *Aurora*, 356 F. Supp. 3d at 756)). But in that case, the court noted that defendant "ha[d] identified no binding precedent establishing that [the court] [was] required to consider the futility of exhaustion and has offered no persuasive argument as to why [the court] should do so." *Aurora*, 356 F. Supp. 3d at 756. That is not the case here. Furthermore, there is no indication that the availability of the escalation process was of concern in *Aurora*. Finally, as noted, In Touch concedes that futility is a "practical" factor in the exhaustion analysis. *See Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991) (characterizing futility as a "practical factor[]" in the waiver analysis for the Social Security Act's exhaustion requirement but weighing it nonetheless). The court turns to that factor now.

The Seventh Circuit has stated that "the exhaustion requirement may be waived 'if it would be futile, that is, if there is no reasonable prospect that the applicant could obtain any relief by pursuing'" administrative remedies. *Martin*, 63 F.3d at 504 (quoting *Health Equity Resources*, 927 F.2d at 965). In *Martin*, a Medicare provider challenged a benefit administrator's locality designation, which affected the amount of reimbursement to which the provider was entitled. *See Martin*, 63 F.3d at 499-500. The court determined that exhaustion was not futile because even though there was "no process for obtaining the sort of declaratory relief [the provider] might prefer," the provider could "ask the [benefits administrator] that handled the disputed claim to review the locality designation within the context of that claim." *Id.* at 505; *see also Health Equity Resources*, 927 F.2d at 966 (where plaintiff sought to challenge an agency regulation and there was "nothing . . . to prevent [plaintiff] from challenging the regulation before the Appeals Council,"

exhaustion was not futile, despite that plaintiff's challenge "may, probably will, fail"); *Miller*, 2015 WL 2257278, at *7 (rejecting plaintiff's futility argument despite the fact that plaintiff lacked certain records and believed he was "unlikely to succeed on the merits"; it was "conceivable" that plaintiff could still prevail within the administrative appeals process). By contrast, in *Marcus*, where plaintiffs asserted a facial challenge to a Social Security agency policy, the court determined that exhaustion *was* futile because the HHS Secretary was on the record as being "committed to [the] policy." *Marcus*, 926 F.2d at 614.

In Touch argues that exhaustion is futile here because the Medicare Act does not give administrative adjudicators the authority to halt recoupment pending an ALJ hearing and decision. (Pl.'s Reply 18; *see also id.* (stating that administrative adjudicators are "jurisdictionally incapable of awarding such relief").) This fact, In Touch contends, distinguishes its case from *Martin* and *Miller*, where relief was available within the administrative appeals system. (*Id.* at 18-19.) Defendants respond that In Touch's case is not about whether the agency can stop recoupment, but rather about the extreme delay In Touch faces in obtaining an ALJ decision on its challenge to the alleged overpayments. (*See* Defs.' Reply 13.) Defendants argue, and the court agrees, that the administrative appeals process does offer a remedy for this delay: escalation.

The ALJ's 90-day deadline for conducting a hearing and rendering a decision was January 20, 2019. (Compl. ¶ 62.) At that time—nine months ago—In Touch could have escalated its appeal to the DAB. *See* 42 U.S.C. § 1395ff(d)(3)(A); 42 C.F.R. §§ 405.1016(a), (e), (f), 405.1100(b). In Touch contends that escalation would be futile because there is an enormous backlog at the DAB stage of review, too. (Pl.'s Reply 19-20.) But the Act and regulations provide that if the Council fails to act within 180 days of escalation, a provider can then escalate its appeal to federal district court. 42 U.S.C. § 1395ff(d)(3)(B); 42 C.F.R. §§ 405.1106(b), 405.1100(d), 405.1132. If In Touch had availed itself of the escalation procedures, it could have properly brought its claim to federal district court within approximately 275 days of the QIC's second-stage decision. Because In Touch did not take these measures (and evidently still refuses to do so),

judicial review is precluded at this time. *See* 42 U.S.C. § 1395ff(b)(1)(A) (incorporating § 405(g)); 42 U.S.C. § 1395ii (incorporating § 405(h)); 42 C.F.R. §§ 405.1130; *see also AvuTox, LLC v. Burwell*, No. 5:15-CV-634-FL, 2017 WL 767449, at *5 (E.D.N.C. Jan. 24, 2017) (the "existence of the escalation provision" "undermines Plaintiff's arguments that exhausting the administrative review process would be futile . . . as Plaintiff can elect to speed up the review process if it so chooses"), *report and recommendation adopted sub nom. AvuTox, LLC v. Cochran*, No. 5:15-CV-634-FL, 2017 WL 758495 (E.D.N.C. Feb. 27, 2017).

In Touch also contends that requiring it to escalate its appeal would force it to give up "vital procedural protections built into the ALJ hearing process." (Pl.'s Reply 21.) Namely, the ALJ process provides an opportunity for a live hearing with attendant "pre- and post-hearing conferences, subpoenas, discovery, witness testimony with cross-examination, and compilation of a formal administrative record." (*Id.* at 12-13.) These procedural protections, In Touch argues, "are not available before the Council or in federal court." (*Id.* at 21.) In Touch also suggests that its chance of obtaining a reversal in federal court is smaller than before an ALJ because "federal court review of a final agency decision is exceedingly deferential to the government." (*Id.* at 2, 25 n.30.)

The court recognizes that the escalation process does not offer procedural protections identical to those available at the ALJ stage of appeal. But as already discussed, the first two stages of review are substantive and thorough: a provider must generally submit all factual evidence during the first two stages, and the adjudicators issue written opinions explaining the reasons for the decisions, based on the evidence. *See* 42 U.S.C. §§ 1395ff(a)(5), (b)(3), (c)(3)(E); 42 C.F.R. §§ 405.946, 405.956(b), 405.966, 405.968(a), 405.976(b). Without minimizing the importance of the procedural protections at the ALJ stage, including a live hearing, the court concludes that these features of redetermination and reconsideration dampen the concern that a provider will be deprived of adequate process by escalating its appeal. Moreover, despite federal courts' deferential review agency decisions, obtaining relief in federal court remains possible.

23

As In Touch emphasizes, some courts have concluded that escalation is not an appropriate substitute for obtaining a final agency decision after an ALJ hearing and DAB appeal. In *American Hospital Association v. Burwell*, the Court of Appeals for the D.C. Circuit discussed the Medicare Act's escalation provisions in deciding whether the court had mandamus jurisdiction to compel the Secretary to act on administrative appeals within the statutory timeframes. 812 F.3d 183, 185-86 (D.C. Cir. 2016). To establish mandamus jurisdiction, the plaintiffs had to "demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* at 189. In examining the third requirement, the court concluded that escalation to the district court was "hardly an adequate substitute for a de novo hearing before an administrative law judge" because "district court review would be deferential." *Id.* at 191-92; *see also Adams EMS*, 2018 WL 5264244, at *10 (in addressing the likelihood of success on the merits for preliminary injunction purposes, stating that "[e]scalation does not adequately protect the procedural safeguards the [Medicare] statute provides the appealing party"); *Accident, Injury & Rehab.*, 2018 WL 4625791, at *7 (same procedural posture as *Adams EMS*) (emphasizing importance of cross-examination at the ALJ stage "given the high rate of reversals at ALJ hearings" and stating that "the escalation process does not provide adequate due process"); *Family Rehab.*, 2018 WL 3155911, at *5 (same procedural posture as *Adams EMS*) ("Escalation does not provide a remedy to the backlogged ALJs because it does not provide adequate procedural due process.").

The court respectfully declines to adopt the reasoning in these cases, which are not binding authority in this circuit. Although the Seventh Circuit has not addressed the exhaustion requirement in the precise circumstances at issue here, it has repeatedly enforced it in Medicare appeals. *See, e.g.*, *Ctr. for Dermatology*, 770 F.3d at 587, 591 (district court lacked subject matter jurisdiction over a motion for a writ of mandamus compelling the Secretary "to process [Medicare] claims submitted for reimbursement" because plaintiff had not yet exhausted administrative remedies); *id.* at 590 ("[C]ontrolling authority from the Supreme Court and this Circuit is airtight

that a litigant may not circumvent the administrative appeals process by seeking mandamus."); *Michael Reese*, 427 F.3d at 440, 443 (district court lacked jurisdiction over a motion seeking enforcement of an administrative resolution concerning Medicare repayments because "exhaustion of administrative remedies is a prerequisite of subject matter jurisdiction under both the federal question and mandamus theories, and [plaintiff] failed to exhaust the review process"); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 481-82, 487 (7th Cir. 1990) (holding that Medicare providers' claims against an HHS contractor for "improperly denying reimbursement claims" arose under the Medicare Act and were subject to the administrative review requirements, and affirming district court's dismissal for lack of subject matter jurisdiction); *Northlake*, 654 F.2d at 1236, 1241-43 (refusing to waive exhaustion requirement for Medicare provider's claim that it was entitled to a hearing before termination of its provider agreement because the claim was neither collateral nor colorable); *see also Bodimetric,* 903 F.2d at 490 ("[B]y enacting the exclusive review provisions of the Medicare Act, Congress expressly limited the remedies that can be sought by dissatisfied claimants . . . . While this may, in some cases, foreclose avenues of relief generally available to civil litigants, it is also the system Congress clearly intended to implement.").

Guided by the reasoning in these cases, the court concludes that In Touch must use the Medicare Act's escalation procedures before asserting its claims in federal court. *See also Ivanchenko v. Burwell*, No. 16 C 9056, 2016 WL 6995570, at *3 (N.D. Ill. Nov. 30, 2016) (though not addressing futility, determining that, where plaintiff had not completed all four stages of the administrative appeals process or invoked the escalation provisions, the court lacked jurisdiction to consider plaintiff's request to enjoin recoupment of overpayments pending ALJ review). Exhaustion would not be futile because, as noted, escalation would allow In Touch to reach federal court in less than a year—much sooner than the three- to five-year delay on which In Touch bases its claims.

**4.     Whether exhaustion would cause irreparable harm**

In determining whether the exhaustion requirement should be waived, a court must also assess whether the provider would suffer irreparable harm "if required to move through the administrative procedure before obtaining relief." *Martin*, 63 F.3d at 504. In Touch contends that "it will be forced out of business imminently," and will therefore suffer irreparable harm, "unless the recoupment of its Medicare payments is halted." (Pl.'s Br. 13.) In Touch has provided a sworn declaration from its sole owner attesting that In Touch has already lost its entire revenue stream (Medicare payments); has approximately $160,000 in debt obligations unrelated to this case; has discharged most of its patients; and has laid off most of its employees.

These circumstances are indeed compelling. But In Touch's ability to escalate its appeal undermines the argument that it will suffer irreparable harm if "required to move through" the Medicare appeals process "before obtaining relief." *Martin*, 63 F.3d at 504; *see AvuTox*, 2017 WL 767449, at *5 (plaintiff's argument that it would suffer irreparable harm was weak because by using the escalation process, plaintiff could "elect to speed up the review process if it so chooses"). In Touch informed the court in August 2019 that it "will be forced to cease operations in the immediate future absent [court] intervention," (August 2019 Notice 1), but it had made similar representations in March 2019. (*See* Compl. ¶ 6 (alleging that In Touch was "on the brink of bankruptcy"); Pl.'s Br. 13 (arguing that In Touch "will be forced out of business imminently").) Yet it appears from the record before the court that In Touch is still operating. If In Touch had escalated its appeal to the DAB as soon as it was eligible to do so—on or around January 20, 2019—it could properly have appealed the overpayment determination in federal court by early August 2019 (approximately 185 days from January 20). By the same token, if In Touch escalated its appeal to the DAB stage tomorrow and the Council failed to act, In Touch could properly reach the district court in approximately 185 days. In Touch's financial circumstances are dire, but it is not clear to the court that In Touch would go out of business before then. Moreover, if a provider prevails on appeal of an overpayment determination, CMS will repay it with interest. 42 U.S.C. § 1395ddd(f)(2)(B). In Touch argues that the possibility of repayment "is manifestly

26

inadequate" because "it assumes that In Touch will be in existence to take advantage of any post-deprivation procedures." (Pl.'s Reply 22; *see also Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (harm is irreparable if it "cannot be prevented or fully rectified by the final judgment after trial"); Pl.'s Br. 13 (citing same).) The possibility of repayment does rely on this assumption, but as just detailed, In Touch could have escalated its appeal nine months ago. Had In Touch done so, it may nonetheless have been forced out of business before the appeals process was complete, but this is not a certainty. Nor does the record establish that In Touch will certainly cease to exist before completing the appeals process if it escalates its claims now.

In Touch separately argues that for purposes of the court's waiver analysis, the proper analysis is whether "full relief cannot be obtained through the available post-deprivation process," not whether In Touch will suffer irreparable harm if forced to exhaust its administrative remedies. (Pl.'s Reply 21-22 (citing *Eldridge*, 424 U.S. at 331).) Seventh Circuit authority provides that courts should consider irreparable harm as part of the waiver analysis, however. *See Martin*, 63 F.3d at 504. And as a practical matter, the analyses merge under the circumstances here. As already detailed, In Touch has not shown that it would have been unable to obtain full relief if it had escalated its appeal to the DAB in January 2019, nor has it shown that it would be unable to obtain full relief if it escalates its appeal to the DAB now.

In sum, even assuming In Touch has asserted a collateral, colorable constitutional claim, it is not entitled to waiver of the exhaustion requirement because it has not shown that (1) exhaustion would be futile and (2) In Touch would suffer irreparable harm if forced to move through the administrative appeals process. *See Martin*, 63 F.3d at 504. In Touch concedes that it has not completed that appeals process, including because it has not requested to escalate its appeal. Accordingly, the court lacks subject matter jurisdiction over In Touch's case. *See Michael Reese Hosp.*, 427 F.3d at 443 ("[E]xhaustion of administrative remedies is a prerequisite of subject matter jurisdiction under both federal question and mandamus theories . . . .").

Neither *A1 Diabetes & Medical Supply v. Azar*, 937 F.3d 613 (6th Cir 2019), nor the Fifth

Circuit's decision in *Family Rehabilitation* persuades the court to reach a different conclusion. In *A1 Diabetes*, the Sixth Circuit determined that it had jurisdiction over a Medicare provider's motion for a preliminary injunction to halt recoupment pending an ALJ hearing in circumstances very similar to those at issue here. *See* 937 F.3d at 617-18. The Sixth Circuit reasoned that the provider had satisfied the non-waivable element of § 405(g) by presenting its claims to the Secretary during the first two stages of the administrative review process. *Id.* It continued that because completion of the four-level review process is a waivable element of § 405(g)—and because the Medicare Act allows a provider to escalate its appeal—"a federal court . . . may review a due process challenge to the process before a party goes through every stage of agency review." *Id.*; *see* Pl.'s Notice of Decision [35] (citing the court to *A1 Diabetes*). The Sixth Circuit concluded that there was jurisdiction without analyzing whether exhaustion should be waived under the circumstances. *See id.* The court respectfully declines to adopt this reasoning because the Seventh Circuit recognizes that the exhaustion element of § 405(g) is waivable, but nonetheless requires further analysis to determine whether waiver of that element is proper. *See, e.g.*, *Martin*, 63 F.3d at 503-05; *Northlake*, 654 F.2d at 1240-43.

In *Family Rehabilitation*, the Fifth Circuit held that the Medicare Act's exhaustion requirement should be waived under the collateral claim exception for a provider who, like In Touch, faced a three- to five-year backlog in receiving an ALJ hearing, had not escalated its appeal, and sought an injunction to halt recoupment pending the hearing. 937 F.3d at 498, 500-04. In reaching its conclusion, the Fifth Circuit determined, among other things, that "the timeline for escalation—combined with the massive backlogs at CMS—means that escalation would be . . . insufficient to avoid irreparable injury." *Id.* at 504 n.16. For the reasons already discussed, the court respectfully maintains that here, In Touch has not established it would suffer irreparable harm if required to escalate its appeal. Moreover, the Fifth Circuit did not expressly analyze whether the exhaustion requirement would be futile. By contrast, this court must carefully consider that issue. Finally, as already discussed, the Seventh Circuit has interpreted the

Medicare Act to require channeling of "virtually all legal attacks through the Medicare program's administrative review process before [a party] may seek judicial review." *Michael Reese*, 427 F.3d at 441; *see also Ctr. for Dermatology*, 770 F.3d at 587, 590-91; *Bodimetric*, 903 at 487, 481-82; *Northlake*, 654 F.2d at 1241-43. The Seventh Circuit's treatment of the exhaustion requirement weighs against following the paths forged by the Fifth and Sixth Circuits.

The massive backlog in the Medicare appeals system is disturbing and the court sympathizes with In Touch. That does not change the fact that In Touch's failure to exhaust its administrative appeals deprives the court of subject matter jurisdiction over its claims. Accordingly, the court dismisses this case without prejudice and declines to consider In Touch's motion for a preliminary injunction.

## CONCLUSION

Defendants' jurisdictional challenge is sustained, and Defendants' motion to dismiss [22] is granted for this reason. The complaint [1] is dismissed without prejudice. Defendants' motion to dismiss for failure to state a claim [22] and Plaintiff's motion for a preliminary injunction [10] are denied as moot.

ENTER:

Dated: October 24, 2019

_____
REBECCA R. PALLMEYER
United States District Judge